Return Date: No return date scheduled
Hearing Date: 10/6/2020 9:30 AM - 9:30 AM
Courtroom Number: 2008
Location: District 1 Court
    Cook County, IL

FILED
6/8/2020 12:00 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL

FILED DATE: 6/8/2020 12:00 AM 2020CH04474

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

MANISH KHARAT and SAWAAN
MANAGEMENT, LLC, an Illinois Limited
Liability Company,

        Plaintiff,

v.

SURINDER ARORA, KEVIN ARORA and
SAWAN KIRPAL, LLC, an Illinois Limited
Liability Company,

        Defendants.

9412517

No. 2020CH04474

### VERIFIED COMPLAINT

Plaintiff, MANISH KHARAT ("KHARAT") and SAWAN MANAGEMENT LLC

("SAWAN MANAGEMENT") by and through their attorney, NICHOLAS M. DURIC, as and

for their Verified Complaint against SURINDER ARORA ("ARORA"), KEVIN ARORA ("K.

ARORA") and SAWAN KIRPAL, LLC an Illinois limited liability company ("SAWAN

KIRPAL") states as follows:

### JURISDICTION AND VENUE

1.    Plaintiff KHARAT is a resident of Nashville, Tennessee.

2.    Plaintiff SAWAN MANAGEMENT is an Illinois Limited Liability Company

with its principal place of business at 3909 11th St. Rockford, Winnebago County, Illinois.

3.    Defendant, ARORA, resides at 5166 Ashley Circle, Lisle, Dupage County,

Illinois. ARORA was the managing member of SAWAN MANAGEMENT. SAWAN

MANAGEMENT is the owner of the real property commonly known as 3909 11th St. Rockford,

IL ("Rockford Property").

1

FILED DATE: 6/8/2020 12:00 AM   2020CH04474

4.      Defendant, SAWAN KIRPAL is an Illinois Limited Liability Company, with its principal place of business located at 1836 W. Ogden Ave. Lisle, Dupage County, Illinois.

5.      Defendant, K. ARORA, resides at 5166 Ashley Circle, Lisle, Dupage County, Illinois and is the manager of Defendant SAWAN KIRPAL.

6.      Defendant ARORA and Plaintiff KHARAT entered into an Agreement dated February 18, 2020 for Purchase and Sale of Real Property for the property commonly known as the Roadway Inn 3909 11th St. Rockford, Illinois (hereinafter "PSA"). See Exhibit 1. By the terms of the PSA KHARAT purchased the Rockford property.

7.      Pursuant to the PSA Defendant ARORA also sold and conveyed to KHARAT, the Illinois limited liability company, Plaintiff, SAWAN MANAGEMENT.

8.      Pursuant to the PSA the parties agreed to prorate/settle all obligations, property taxes and assessments as of February 18, 2020 pertaining to the Rockford Property and SAWAN MANAGEMENT.

9.      Unbeknownst to Plaintiff KHARAT on August 14, 2019 the City of Rockford issued notice of building code violations for the Rockford property. See Exhibit 2.

10.     ARORA did not advise Plaintiff KHARAT of the foregoing building code violations or of the existence of Exhibit 2.

11.     As part of the consideration for the purchase and sale of the Rockford property, Plaintiff KHARAT signed a Quit Claim Deed for the real property commonly known as 1116 W. Adams St., Chicago, Cook County, Illinois ("Adams Property"). The grantee in said Quit Claim Deed is Defendant SAWAN KIRPAL and Defendant K. ARORA. See Exhibit 3.

12.     The foregoing Quit Claim Deed was recorded with the Cook County Recorder of Deeds on February 21, 2020 as Document No. 2005245197. The recording also contained a

FILED DATE: 6/8/2020 12:00 AM   2020CH04474

Grantor/Grantee Affidavit: Statement by Grantor/Grantee and there were no transfer taxes paid. Plaintiff as Grantor did not sign the Affidavit Grantor/Grantee Statement, and the Affidavit/Statement contains an unknown signature for the Grantor. Further, the grantor's signature on the Affidavit/Statement was notarized by Heena Arora ( a potential cause of action is being researched against the Notary Public Heena Arora).

13.     The Quit Claim Deed on its face clearly states consideration of $120,000.00.

14.     Without knowledge or consent of Plaintiffs, Defendants, or their agents or representatives, recorded the deed for the Adams property as an exempt transaction, without Plaintiff Grantor's signature.

**COUNT I**
**<ins>(Breach of Contract against ARORA)</ins>**

15.     Plaintiffs reallege the allegations of paragraphs 1 through 14 as paragraph 15 as though fully set forth herein.

16.     By the terms of the PSA, Defendant ARORA agreed to prorate the obligations, taxes and assessments of the Rockford property and SAWAN MANAGEMENT as of February 18, 2020.

17.     There remains due and owing from Defendant to Plaintiff the sum of $78,282.07 pursuant to the proration and foregoing PSA.

18.     Due demand has been made upon Defendant to pay, but to date Defendant has failed and refused to pay the amount due and owing to Plaintiffs.

19.     Defendant has breached its agreement with Plaintiff, and Plaintiff has been damaged in the amount of $78,282.07.

FILED DATE: 6/8/2020 12:00 AM   2020CH04474

**WHEREFORE** the Plaintiffs pray this Honorable Court enter judgment in its favor and against Defendant in the amount of $78,282.07 plus interest, attorneys' fees and costs of this action and for such further relief as this Court deems just.

## COUNT II
### (Accounting from Defendant Arora)

20.     Plaintiff hereby re-alleges Paragraphs 1 through 19 of the Complaint as paragraph 20 and incorporates the same by reference as though fully set forth herein.

21.     The books, records and bank account information relating to SAWAN MANAGEMENT were and are exclusively in the control of Defendant, ARORA.  Plaintiffs have an inadequate legal remedy in that they cannot determine the precise amount of damage they have suffered because of Defendant, ARORA'S's, breaches of the foregoing contract.

22.     Plaintiffs needs to take discovery for a full and complete accounting of all costs, receipts, expenses and disbursements made through the date of the PSA by Defendant ARORA regarding the Rockford property and SAWAN MANAGEMENT so Plaintiffs can accurately determine the full extent of their losses.

WHEREFORE, Plaintiffs, pray that this Honorable Court enter an Order:

A.     Directing Defendant, ARORA to make a strict accounting of all assets, monies and funds, and of all uses and disbursements thereof regarding the Rockford property and SAWAM MANAGEMENT

B.     Directing Defendant ARORA to pay to Plaintiffs the amount found due on the accounting;

C.     Directing Defendant ARORA to pay the attorney's fees and costs incurred in the investigation and prosecution of this cause;

FILED DATE: 6/8/2020 12:00 AM   2020CH04474

D.     Granting such other and further relief as this Court deems just and equitable under the circumstances.

**COUNT III**
**(Fraud against Defendant ARORA, SAWAN KIRPAL and K. ARORA)**

23.     Plaintiff incorporates by reference and re-alleges paragraphs 1 through 22 herein as paragraph 23 as if fully set forth.

24.     Defendant ARORA suppressed and concealed from KHARAT that the City of Rockford had issued multiple building code violations for the Rockford property on August 14, 2019. The cost of repair and replacement for said violations are estimated to be approximately $400,000.00. (Plaintiffs are currently obtaining formal estimates for the work and this complaint may be amended).

25.     Defendants ARORA, K. ARORA and SAWAN KIRPAL suppressed and concealed that they, their agents and/or representatives would record the Quit Claim Deed with the Cook County Recorder of Deeds as an exempt transaction, and that the Affidavit/Statement by Grantor Grantee would not contain Plaintiff's signature, and grantor's signature would be notarized.

26.     All of these actions were intended by Defendants to benefit their own pecuniary interests. Defendants had a duty to Plaintiffs to disclose all material facts.

27.     Defendants suppressed and concealed material facts from Plaintiffs and with the intent to induce reliance and to defraud Plaintiff, and the conduct by Defendants constitutes fraud.

28.     As a proximate result of Defendant's intentional and fraudulent concealment of the above described material facts, Plaintiff has sustained damages.

29.    The aforementioned acts of Defendants were willful, wanton, malicious and oppressive, were undertaken with the intent to defraud and justify the award of exemplary and punitive damages.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants, in an amount to be proven by the evidence at trial, with interest, attorney's fees and costs, and award punitive damages in an amount sufficient to punish Defendant's wrongful conduct and to deter such misconduct in the future and to enjoin any parties from selling or conveying the Adams Street Property.

## COUNT IV
### (Equitable Mortgage)

30.    Plaintiff incorporates by reference and re-alleges paragraphs 1 through 29 herein as paragraph 30 as if fully set forth.

31.    The quit claim deed to Defendants K. ARORA and SAWAN KIRPAL was part of the consideration of the transaction with regard to Plaintiff's purchase of the Rockford property and SAWAN MANAGEMENT.

32.    Pursuant to the PSA Plaintiff is owed at least $78,282.07 in prorations of obligations, taxes and assessments of the Rockford property and SAWAN MANAGEMENT.

33.    The $78, 282.07 was never paid to Plaintiff.

34.    Plaintiff is still assessing the costs to remedy the undisclosed building code violations on the Rockford property, which are estimated at this time to be approximately $400,000.00.

35.    Plaintiff's claims an equitable mortgage of the Adams Street Property in the amount of at least $478, 282.07. This amount may be amended upon receipt of final estimates for the remedying of the undisclosed violations on the Rockford property.

FILED DATE: 6/8/2020 12:00 AM    2020CH04474

FILED DATE: 6/8/2020 12:00 AM    2020CH04474

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants, and grant an equitable mortgage in at least the amount of $478,282.07 against the property commonly known as 1116 W. Adams Street Chicago, IL (Legal Description attached in Exhibit 4) and Defendants plus interest, attorney's fees and costs, and punitive damages in an amount sufficient to punish Defendants wrongful conduct and to deter such misconduct in the future.

Respectfully Submitted,

MANISH KHARAT and SAWAN MANAGEMENT, LLC

By: Nicholas M. Duric
        Attorney for Plaintiffs

Nicholas M. Duric
350 S. Northwest Highway
Suite 300
Park Ridge, IL 60068
(773) 791-9250
Duriclaw@att.net

FILED DATE: 6/8/2020 12:00 AM   2020CH04474

STATE OF ILLINOIS   )
                    ) SS
COUNTY OF COOK      )

## <u>VERIFICATION</u>

Pursuant to 735 ILCS 5/1-109 of the Code of Civil Procedure, and subject to the penalties thereof, I, MANISH KHARAT, state that I have knowledge of the matters alleged in the foregoing document and that the statements contained therein are true to the best of my knowledge and belief.

_____
MANISH KHARAT

Date: _____5/28/2020_____

8

FILED DATE: 6/8/2020 12:00 AM   2020CH04474

# EXHIBIT 1

FILED DATE: 6/8/2020 12:00 AM   2020CH04474

Agreement for Purchase and Sale of Real Property

(Roadway Inn, 3909 11th St, Rockford, IL 61109)

**Date: February, 18ᵗʰ, 2020**

The purchase and sale agreement ("the Agreement"), made as of the day February 18th, 2020,

(the "effective date"), between Surinder Arora (the "Seller") and Manish Kharat or their assignee (the "Buyer").

Property Location: Roadway Inn, 3909 11th St, Rockford, IL 61109 (Legal Description -*Exhibit 1*)

Seller Desires to sell Hotel, "AS IS" with the land, buildings, furniture, fixtures, equipment and other personal Property used in the operation of the Hotel **along with the entity that is the owner of record, namely SAWAN MANAGEMENT, LLC,** an IL corporation with Control # 06626335 currently holding the deed of the above mentioned property identified by parcel # 15-12-303-003 (228C065) with legal description as:

BEGN W LN HWY AS CONVD AT PT 860.86FT S OF N LN SW1/4 SEC 12 TH N 400FT TH W 600FT TH S400FT TH E 600FT TO POB PT NW 1/4 SW1/4 SEC: 12 TWP: 043 RANGE: 001 ACRES: 5.51

Now, therefore, the parties agree as follows:

1. Purchase Price Seven Hundred Fifty Thousand Dollars

**($750,000) (the "Purchase Price"),** payable as follows:

(A) At the closing of the escrow, Buyer will pay One Hundred Thousand Dollars ($100,000.00) to the Seller towards the purchase of the property.

(B) Buyer and Seller agree that the closing shall occur on 2/18/2020

(C) The Seller will carry a promissory note *(Exhibit#1)* as the first lien of the remaining Eight-Hundred Thousand **($650,000.00) at 6.00% annual interest rate** to be paid according to attached 15 year amortization schedule *(Exhibit# 2)*. No pre-payment penalty will be assessed, if buyer chooses to pay early. Buyer also signed a personal guaranty to fulfil this obligation *(Exhibit #3)*

2. Buyer accepts property in **AS-IS and where-is condition** and releases and holds harmless the seller for any claim, loss, dispute, or suits and releases the seller from the obligation and/or responsibility for any repairs or any other issues. The Buyer acknowledges that it is purchasing the Property "AS IS" solely in reliance on buyer's own inspection and that no representation or warranties of any kind whatsoever, express or implied, have been made by Seller. ~~Seller does warrant that Buyer is the actual deeded owner of the property and there are no other liens on the title of the property.~~ Seller does warrant that seller is unaware of any major plumbing, electrical or roofing issues with the property and property meets all the required building inspections and standards till date and no notice or action or ruling has been issued by any authorities that is unfavorable to carry out daily hotel/motel operation at the said premises.

3. Buyer shall obtain all necessary licenses and permits related to the operation of the hotel, that are not transferable, or that are otherwise necessary. All leases and contracts shall be transferred As-Is to Buyer.

4. Before February of 2027, or anytime upon fulfillment of the attached note *(Exhibit #1)* in FULL, the Seller (Surinder Arora) shall deliver the Buyer a duly executed and acknowledged grant deed for the hotel, free and clear of all liens and encumbrances that was recorded with Deed # 20181016796 in Winnebago County and the Seller or any lender or 3ʳᵈ party will have no claims towards the ownership or any interest of the above mentioned property or the entity sold namely SAWAN MANAGEMENT, LLC.

FILED DATE: 6/8/2020 12:00 AM   2020CH04474

5. All obligations under any contract assigned to the Buyer at the Closing and all real property taxes and assessments shall be prorated/settled between the parties after Closing within next 30 days. Any funds owed by Buyer or Seller for either parties prorated share of such items shall be paid after Closing either directly to the party owed or settled amongst each other prorated as of 2/18/2020 within 30 days of 2/18/2020. The cost of escrow and city and county transfer taxes and title insurance shall be shared equally by Buyer and Seller.

*As of 2/18/2020 SA NM*

6. Buyer is responsible for changing the name under utilities associated with the property from Seller to Buyer, including but not limited to power, gas, water and sewer, phone, and cable once, no later than 30 days after Closing is complete and any and all bills to be prorated as of 2/18/2020

7. Seller represents and warrants to Buyer that he has not engaged the services of any broker or finder or any other person who might be entitled to a fee. Buyer represents to Seller that he has not engaged the services of any Broker or finder or any other person who might be entitled to a fee. Based upon such representations and warranties, the parties hereby agree to indemnify and hold one another harmless from and against any and all claims, demands, liabilities, losses, judgements, costs and expenses (including, without limitation, reasonable attorney's fees) arising out of any claim for a fee or commission. The representations, warranties and agreements contained in this Section shall survive the close of escrow.

8. The parties hereby acknowledge and agree that this Agreement shall not be deemed prepared or drafted by one party or another, and will be construed accordingly. Accordingly, any rule of law or legal decision that would require interpretation of any ambiguities in this Agreement against the party that has drafted it is not applicable and is waived. The provisions of this Agreement shall be interpreted in a reasonable manner to effect the purposes of the parties and this Agreement.

Buyer

_____

Seller

**NOTARY**

FILED DATE: 6/8/2020 12:00 AM   2020CH04474

# EXHIBIT 2

FILED DATE: 6/8/2020 12:00 AM  2020CH04474

**City of Rockford, Illinois**
Community & Economic Development Department
Construction and Development Services
425 East State Street, Rockford, IL 61104
Phone: (779) 348-7158  Fax: (815) 967-4243
Web: www.rockfordil.gov



THE CITY OF
ROCKFORD
ILLINOIS, USA

# Property Maintenance Inspection Report

Address:    3909 11TH ST
Date:       August 14, 2019           11:30 AM
Inspector:  Brian Bracken, Property Standards Inspector

### Code Violations of the 2015 International Property Maintenance Code as Adopted with Amendments Ordinance #2015-221-O

## Chapter 1

**110.1**   General. The code official shall order the owner or owner's authorized agent of any premises upon which is located any structure, which in the code official's or owner's authorized agent judgment after review is so deteriorated or dilapidated or has become so out of repair as to be dangerous, unsafe, insanitary or otherwise unfit for human habitation or occupancy, and such that it is unreasonable to repair the structure, to demolish and remove such structure; or if such structure is capable of being made safe by repairs, to repair and make safe and sanitary, or to board up and hold for future repair or to demolish and remove at the owner's option; or where there has been a cessation of normal construction of any structure for a period of more than two years, the code official shall order the owner or owner's authorized agent to demolish and remove such structure, or board up until future repair. Boarding the building up for future repair shall not extend beyond one year, unless approved by the building official.
**\*CONDEMNED AREAS NEED TO BE MADE SECURED**

## Chapter 3 General Requirements

## Section 301 General

**301.3**   Vacant structures and land. All vacant structures and premises thereof or vacant land shall be maintained in a clean, safe, secure and sanitary condition as provided herein so as not to cause a blighting problem or adversely affect the public health or safety.
**\*VACANT STRUCTURES NEED TO BE MAINTAINED TO PREVENT BLIGHT AND FURTHER DISREPAIR**

## Section 302 Exterior Property Areas

**302.4**   Weeds. Premises and exterior property shall be maintained free from weeds or plant growth in excess of 10 inches. Noxious weeds shall be prohibited. Weeds shall be defined as all grasses, annual plants and vegetation, other than trees or shrubs provided; however, this term shall not include cultivated flowers and gardens. Upon failure of the owner or agent having charge of a property to cut and destroy weeds after service of a notice of violation, they shall be subject to prosecution in accordance with Section 106.3 and as prescribed by the authority having jurisdiction. Upon failure to comply with the notice of violation, any duly authorized employee of the jurisdiction or contractor hired by the jurisdiction shall be authorized to enter upon the property in violation and cut and destroy the weeds growing thereon, and the the jurisdiction or contractor hired by the jurisdiction shall be authorized to enter upon the property in violation and cut and destroy the weeds growing thereon, and the costs of such removal shall be paid by the owner or agent responsible for the property.
**\*ALL WEEDS AND BRUSH TO BE REMOVED**

FILED DATE: 6/8/2020 12:00 AM   2020CH04474

## Section 304 Exterior Structure

**304.10**    Stairways, decks, porches and balconies. Every exterior stairway, deck, porch and balcony, and all appurtenances attached thereto, shall be maintained structurally sound, in good repair, with proper anchorage and capable of supporting the imposed loads.
**\*ALL DAMAGED CONCRETE DECKS TO BE REPAIRED UNDER BUILDING PERMIT**

**304.12**    Handrails and guards. Every handrail and guard shall be firmly fastened and capable of supporting normally imposed loads and shall be maintained in good condition.
**\*ALL DAMAGED AND MISSING HANDRAILS OR GUARDRAILS TO BE REPAIRED UNDER BUILDING PERMIT; THE RAILINGS NEED TO BE PROPERLY SECURED WITH APPROPRIATE HARDWARE**

**304.13.1**    Glazing. All glazing materials shall be maintained free from cracks and holes.
**\*ALL BROKEN AND MISSING WINDOWS NEED TO BE REPAIRED**

**304.15**    Doors. All exterior doors, door assemblies and hard-ware shall be maintained in good condition. Locks at all en-trances to dwelling units, rooming units and guestrooms shall tightly secure the door. Locks on means of egress doors shall be in accordance with Section 702.3.
**\*ALL EXTERIOR DOORS TO BE MADE SECURE; ALL DOORS NEED TO OPERATE AND FUNCTION FOR THEIR INTENDED USE**

**304.18**    Building security. Doors, windows or hatchways for dwelling units, room units or housekeeping units shall be pro-vided with devices designed to provide security for the occu-pants and property within.
**\*ALL THRU THE WALL SLEEVES FOR HEAT COOL UNITS TO BE SECURED**

**304.7**    Roofs and drainage. The roof and flashing shall be sound, tight and not have defects that admit rain. Roof drainage shall be adequate to prevent dampness or deterioration in the walls or interior portion of the structure. Roof drains, gutters and downspouts shall be maintained in good repair and free from obstructions. Roof water shall not be discharged in a man-ner that creates a public nuisance.
**\*ALL DAMAGED AND LEAKING ROOF SYSTEMS TO BE REPAIRED BY LICENSED ROOFING CONTRACTOR UNDER ROOFING PERMIT**

## Section 305 Interior Structure

**305.1**    General. The interior of a structure and equipment therein shall be maintained in good repair, structurally sound and in a sanitary condition. Occupants shall keep that part of the structure which they occupy or control in a clean and sanitary condition. Every owner of a structure containing a rooming house, housekeeping units, a hotel, a dormitory, two or more dwelling units or two or more nonresidential occupancies, shall maintain, in a clean and sanitary condition, the shared or public areas of the structure and exterior property.
**\*ALL GARBAGE AND DEBRIS NEEDS TO BE REMOVED FROM ALL CONDEMNED AREAS; WORK NEEDS TO BE DONE UNDER DEMOLITION PERMIT**

**305.3**    Interior surfaces. All interior surfaces, including win-dows and doors, shall be maintained in good, clean and sanitary condition. Peeling, chipping, flaking or abraded paint shall be repaired, removed or covered. Cracked or loose plaster, de-cayed wood and other defective surface conditions shall be cor-rected.
**\*ALL WATER DAMAGED DRYWALL, PLASTER AND CARPETING TO BE REPAIRED; AREA BEHIND CONVENTION CENTER HAS DAMAGED AND MISSING CEILING TILE; POOL ROOM HAS MISSING AND DAMAGED CEILING TILE; NEED TO MAKE REPAIRS UNDER BUILDING PERMIT**

**305.6**    Interior doors. Every interior door shall fit reasonably well within its frame and shall be capable of being opened and closed by being properly and securely attached to jambs, head-ers or tracks as intended by the manufacturer of the attachment hardware.
**\*ALL INTERIOR DOORS TO BE REPAIRED OR REPLACED AND MADE SECURE**

## Chapter 4 Light, Ventilation and Occupancy Limitations

**404.4.4**    Prohibited occupancy. Kitchens and non-habitable spaces shall not be used for sleeping purposes.
**\*ALL BEDDING AND PLACES THAT APPEAR TO HAVE PEOPLE SLEEPING IN THE CONDEMNED AREAS NEED TO BE REMOVED**

## Chapter 5 Plumbing Facilities and Fixture Requirements

**504.1**    General. All plumbing fixtures shall be properly in-stalled and maintained in working order, and shall be kept free from obstructions, leaks and defects and be capable of per-forming the function for which such plumbing fixtures are de-signed. All plumbing fixtures shall be maintained in a safe, sanitary and functional condition.
**\*ALL PLUMBING THAT HAS BEEN INSTALLED UNDER NO PERMIT TO BE EXPOSED FOR INSPECTION AND IL LICENSED PLUMBING CONTRACTOR TO MAKE ANY NEEDED REPAIRS UNDER PLUMBING PERMIT**

FILED DATE: 6/8/2020 12:00 AM   2020CH04474

**504.3**    Plumbing system hazards. Where it is found that a plumbing system in a structure constitutes a hazard to the occu-pants or the structure by reason of inadequate service, inade-quate venting, cross connection, backsiphonage, improper installation, deterioration or damage or for similar reasons, the code official shall require the defects to be corrected to elimi-nate the hazard.
**\*ALL OPEN SEWERS TO BE REPAIRED; ALL BETHROOMS NEED TO BE OPERABLE; ALL WORK TO BE DONE BY IL LICENSED PLUMBING CONTRACTORS**

**505.1**    General. Every sink, lavatory, bathtub or shower, drink-ing fountain, water closet or other plumbing fixture shall be properly connected to either a public water system or to an ap-proved private water system. All kitchen sinks, lavatories, laundry facilities, bathtubs and showers shall be supplied with hot or tempered and cold running water in accordance with the International Plumbing Code.
**\*CONVENTION CENTER AND KITCHEN WING DOES NOT HAVE WATER TO THE BUILDING**

## Chapter 6 Mechanical and Electrical Requirements

**602.3**    Heat supply. Every owner and operator of any building who rents, leases or lets one or more dwelling unit, rooming unit, dormitory or guestroom on terms, either expressed or implied, to furnish heat to the occupants thereof shall supply heat during the period from November 1 to April 1 to maintain a temperature of not less than 68°F in all habitable rooms, bathrooms, and toilet rooms.
**\*HEAT REGISTERS IN POOL ROOM ARE DETERIORATED AND IN BAD REPAIR; NEED TO REPAIR OR REPLACE UNDER MECHANICAL PERMIT BY CITY LICENSED MECHANICAL CONTRACTOR**

**603.1**    Mechanical appliances. All mechanical appliances, fireplaces, solid fuel-burning appliances, cooking appliances and water heating appliances shall be properly installed and maintained in a safe working condition, and shall be capable of performing the intended function.
**\*ALL BATHROOM EXHAUST FANS THAT DO NOT OPERATE CORRECTLY NEED TO BE REPAIRED OR REPLACED BY CITY LICENSED MECHANICAL CONTRACTOR UNDER MECHANICAL PERMIT**

**604.3**    Electrical system hazards. Where it is found that the electrical system in a structure constitutes a hazard to the occu-pants or the structure by reason of inadequate service, improper fusing, insufficient receptacle and lighting outlets, improper wiring or installation, deterioration or damage, or for similar reasons, the code official shall require the defects to be cor-rected to eliminate the hazard.
**\*ALL PANELS, OUTLETS, SWITCHES, LIGHTS AND JUNCTION BOXES TO HAVE PROPER COVERS INSTALLED BY CITY REGISTERED ELECTRICAL CONTRACTOR UNDER ELECTRICAL PERMIT**

**605.1**    Installation. All electrical equipment, wiring and appli-ances shall be properly installed and maintained in a safe and approved manner.
**\*ALL ROMEX TO BE REPLACED WITH CONDUIT BY CITY REGISTERED ELECTRICAL CONTRACTOR UNDER ELECTRICAL PERMIT**

**605.2**    Receptacles. Every habitable space in a dwelling shall contain not less than two separate and remote receptacle outlets. Every laundry area shall contain not less than one grounding-type receptacle or a receptacle with a ground fault circuit interrupter. Every bathroom shall contain not less than one receptacle. Any new bathroom receptacle outlet shall have ground fault circuit interrupter protection. All receptacle outlets shall have the appropriate faceplate cover for the location.
**\*ALL POWER STRIPS AND EXTENSION CORDS NEED TO BE REMOVED**

## Chapter 7 Fire Safety Requirements

**703.1**    Fire-resistance-rated assemblies. The required fire-re-sistance rating of fire-resistance-rated walls, fire stops, shaft enclosures, partitions and floors shall be maintained.
**\*ALL MECHANICAL ROOMS WITH A FIRE RATING MUST NOT HAVE ANY OPEN PENETRATIONS TO THE FLOOR ABOVE OR THE HALLWAY NEXT TO IT**

FILED DATE: 6/8/2020 12:00 AM   2020CH04474

### Code Violations of the 2015 International Residential Code as Adopted with Amendments Ordinance #2015-262-O

## Chapter 1 Requirements

## Section R105 Permits

**R105.1**   Required: Any owner or authorized agent who intends to construct, enlarge, alter, repair, move, demolish, or change the occupancy of a building or structure, or to erect, install, enlarge, alter, repair, remove, convert or replace any electrical, gas, mechanical or plumbing system, the installation of which is regulated by this code, or to cause any such work to be done, shall first make application to the building official and obtain the required permit.
**\*PLUMBING, ELECTRICAL, MECHANICAL AND STRUCTURAL WORK BEING DONE WITHOUT PERMITS;**
**\*WORK BEING DONE IN SOUTH WING NEEDS ALL MEP'S AND BUILDING PERMIT;**
**\*CONVENTION CENTER HAS BEEN UPDATED WITH NEW ELECTRICAL FIXTURES;**
**\*NEED TO SUBMIT STAMPED DRAWINGS BY LICENSED DESIGN PROFESSIONAL FOR REVIEW AND PERMITS;**

FILED DATE: 6/8/2020 12:00 AM   2020CH04474

EXHIBIT 3

**Prepared By**

Name: _MANISH KHARAT_
Address: _1501 DEMONBREUN ST._
_Nashville, TN_
State: _TN_ Zip Code: _37203_

**After Recording Return To**

Name: _KEVIN ARORA_
Address: _5166 ASHLEY CIR_
_#566_
State: _IL_ Zip Code: _60532_

Doc# 2005245197 Fee $88.00

RHSP FEE:$9.00 RPRF FEE: $1.00
EDWARD M. MOODY
COOK COUNTY RECORDER OF DEEDS
DATE: 02/21/2020 02:20 PM PG: 1 OF 4

Space Above This Line for Recorder's Use

### ILLINOIS QUIT CLAIM DEED

STATE OF ILLINOIS
_IL , Cook_ COUNTY

KNOW ALL MEN BY THESE PRESENTS, That for and in consideration of the sum of
($ _120,000_ ) in hand paid to

(CHAPS Property Mgmt) _Manish Kharat_, a _____, residing at _____
County of _Williamson_, City of _Brentwood_, State of _TN_
(hereinafter known as the "Grantor(s)") hereby quitclaims to _Sawan Kripal llc._
a _IL corporation_ residing at _5166 Ashley Circle_, County of _____, (Kevin Arora)
City of _Laisle_, State of _IL_ (hereinafter known as the
"Grantee(s)") all the rights, title, interest, and claim in or to the following described real
estate, situated in _Cook_ County, Illinois, to-wit:

_1116 W. Adams street, Chicago, IL 60607_
_PIN 17-17-210-113-0000_

### [INSERT LEGAL DESCRIPTION HERE OR ATTACH AND INSERT]

hereby releasing and waiving all rights under and by virtue of the Homestead Exemption
Laws of the State of Illinois.

**To have and to hold**, the same together with all and singular the appurtenances
thereunto belonging or in anywise appertaining, and all the estate, right, title, interest,
lien, equity and claim whatsoever for the said first party, either in law or equity, to the
only proper use, benefit and behoof of the said second party forever.

| REAL ESTATE TRANSFER TAX | | 21-Feb-2020 |
|---|---|---|
| CHICAGO: | | 0.00 |
| CTA: | | 0.00 |
| TOTAL: | | 0.00 * |
| 17-17-210-113-0000 | 20200201621815 | 1-436-329-824 |

| REAL ESTATE TRANSFER TAX | | 21-Feb-2020 |
|---|---|---|
| COUNTY: | | 0.00 |
| ILLINOIS: | | 0.00 |
| TOTAL: | | 0.00 |
| 17-17-210-113-0000 | 20200201621815 | 0-865-423-200 |

* Total does not include any applicable penalty or interest due.

FILED DATE: 6/8/2020 12:00 AM 2020CH04474

_(signature)_

Grantor's Signature (For MAPS Property Mgmt)

Manish Kharat

Grantor's Name

1501 Demonbreun, street

Address

Nashville, TN 37203

City, State & Zip

Grantor's Signature

Grantor's Name

Address

City, State & Zip

STATE OF ILLINOIS TN )

COUNTY OF Williamson )

I, the undersigned, a Notary Public in and for said County, In said State, hereby certify that Manish Kharat whose names are signed to the foregoing instrument, and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, they, executed the same voluntarily on the day the same bears date.

Given under my hand this 19 day of Feb , 20 2 0

_(notary seal: SHILPA BAKSHI / STATE OF TENNESSEE NOTARY PUBLIC / WILLIAMSON COUNTY)_

Notary Public

My Commission Expires: 4-3-22

Page 2 of 2

MK
SA

FILED DATE: 6/8/2020 12:00 AM 2020CH04474

EXHIBIT A

LEGAL DESCRIPTION

PARCEL 1:

THAT PART OF LOTS 1 TO 8, BOTH INCLUSIVE, TOGETHER WITH THE NORTH AND SOUTH ALLEY (NOW VACATED) LYING EAST OF LOTS 2 AND 8 AND LYING WEST OF LOTS 1, 3, 4, 5, 6 AND 7 (EXCEPTING THEREFROM THAT PARTY LYING WEST OF A LINE DRAWN PERPENDICULAR TO THE SOUTH LINE OF SAID LOT 8 AT A POINT BEING 150 FEET WEST OF THE NORTHWEST CORNER OF THE INTERSECTION OF WEST ADAMS STREET AND SOUTH ABERDEEN STREET TO A POINT ON THE NORTH LINE OF SAID LOT 2) TAKEN AS A TRACT OF LAND IN ASSESSOR'S DIVISION OF THE SOUTH 1/2 OF BLOCK 12 (EXCEPT THE WEST 200 FEET THEREOF) IN CANAL TRUSTEES' SUBDIVISION OF THE WEST 1/2 AND THE WEST 1/2 OF THE NORTHEAST 1/4 OF SECTION 17, TOWNSHIP 39 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, LYING BELOW A HORIZONTAL PLANE HAVING AN ELEVATION OF +26.29 CHICAGO CITY DATUM WHICH IS BOUNDED AND DESCRIBED AS FOLLOWS: BEGINNING AT THE SOUTHWEST CORNER OF SAID TRACT; THENCE NORTH 00° 00' 00" EAST ALONG THE WEST LINE OF SAID TRACT A DISTANCE OF 8.40 FEET; THENCE NORTH 90° 00' 00" EAST, 1.36 FEET; THENCE NORTH 00° 00' 00" EAST, 17.52 FEET; THENCE NORTH 90° 00' 00" EAST, 17.88 FEET; THENCE SOUTH 00° 00' 00" WEST, 17.20 FEET; THENCE SOUTH 90° 00' 00" WEST, 4.25 FEET; THENCE SOUTH 00° 00' 00" WEST, 8.72 FEET TO THE SOUTH LINE OF SAID TRACT (THE SOUTH LINE OF SAID TRACT ALSO BEING THE NORTH LINE OF W. ADAMS ST.); THENCE SOUTH 90° 00' 00" WEST ALONG THE SOUTH LINE OF SAID TRACT A DISTANCE OF 14.99 FEET TO THE PLACE OF BEGINNING, ALL IN COOK COUNTY, ILLINOIS.

PARCEL 2:

NON-EXCLUSIVE EASEMENT APPURTENANT TO AND FOR THE BENEFIT OF PARCEL 1 AS CREATED BY THE AMENDED AND RESTATED DECLARATION OF COVENANTS, CONDITIONS, RESTRICTIONS AND RECIPROCAL EASEMENTS FOR 1100 W. ADAMS, CHICAGO, ILLINOIS 60607 DATED JUNE 30, 2014 AND RECORDED JULY 7, 2014 AS DOCUMENT NUMBER 1418816060, AS PARTICULARLY DESCRIBED AND DEFINED THEREIN.

PERMANENT INDEX NUMBER:                    17-17-210-113-0000

COMMON ADDRESS:                    1116 W. Adams Street, Chicago, IL 60607

FILED DATE: 6/8/2020 12:00 AM   2020CH04474

## GRANTOR/GRANTEE AFFIDAVIT: STATEMENT BY GRANTOR AND GRANTEE
### AS REQUIRED BY §55 ILCS 5/3-5020 (from Ch. 34, par, 3-5020)

**GRANTOR SECTION**

The GRANTOR or her/his agent, affirms that, to the best of her/his knowledge, the name of the GRANTEE shown on the deed or assignment of beneficial interest (ABI) in a land trust is either a natural person, an Illinois corporation or foreign corporation authorized to do business or acquire and hold title to real estate in Illinois, a partnership authorized to do business or acquire and hold title to real estate in Illinois, or another entity recognized as a person and authorized to do business or acquire and hold title to real estate under the laws of the State of Illinois.

DATED: 02 | 20 |, 20 20                    SIGNATURE: _____
                                                              GRANTOR or AGENT

**GRANTOR NOTARY SECTION:** The below section is to be completed by the NOTARY who witnesses the GRANTOR signature,

Subscribed and sworn to before me, Name of Notary Public:

By the said (Name of Grantor): Susan Thind

On this date of: 02 - 20 |, 20 20

NOTARY SIGNATURE: _____

AFFIX NOTARY STAMP BELOW

```
NOTARY PUBLIC
HEENA ARORA
No. 01AR6325072
Exp. 05/18/20......
NASSAU COUNTY
STATE OF NEW YORK
```

**GRANTEE SECTION**

The GRANTEE or her/his agent affirms and verifies that the name of the GRANTEE shown on the deed or assignment of beneficial interest (ABI) in a land trust is either a natural person, an Illinois corporation or foreign corporation authorized to do business or acquire and hold title to real estate in Illinois, a partnership authorized to do business or acquire and hold title to real estate in Illinois or other entity recognized as a person and authorized to do business or acquire and hold title to real estate under the laws of the State of Illinois.

DATED: 02 | 20 |, 20 20                    SIGNATURE: _____
                                                              GRANTEE or AGENT

**GRANTEE NOTARY SECTION:** The below section is to be completed by the NOTARY who witnesses the GRANTEE signature,

Subscribed and sworn to before me, Name of Notary Public:

By the said (Name of Grantee): Surindeal Singh

On this date of: _____ |, 20

NOTARY SIGNATURE: _____

AFFIX NOTARY STAMP BELOW

```
NOTARY PUBLIC
HEENA ARORA
No. 01AR6325072
Exp. 05/18/20......
NASSAU COUNTY
STATE OF NEW YORK
```

### CRIMINAL LIABILITY NOTICE
Pursuant to Section 55 ILCS 5/3-5020(b)(2), Any person who knowingly submits a false statement concerning the identity of a GRANTEE shall be guilty of a CLASS C MISDEMEANOR for the FIRST OFFENSE, and of a CLASS A MISDEMEANOR, for subsequent offenses.

(Attach to DEED or ABI to be recorded in Cook County, Illinois if exempt under provisions of the Illinois Real Estate Transfer Act: (35 ILCS 200/Art. 31)

rev. on 10.17.2016

FILED DATE: 6/8/2020 12:00 AM   2020CH04474

FILED DATE: 6/8/2020 12:00 AM   2020CH04474

# EXHIBIT 4

FILED DATE: 6/8/2020 12:00 AM   2020CH04474

ALTA Commitment (6/17/06)

**COMMITMENT FOR TITLE INSURANCE**
**SCHEDULE A**

**Exhibit A - Legal Description**

Parcel 1: That part of Lots 1 to 8, both inclusive, together with the North and South alley (now vacated) lying East of Lots 2 and 8 and lying West of Lots 1, 3, 4, 5, 6 and 7 (excepting therefrom that party lying West of a line drawn perpendicular to the South line of said Lot 8 at a point being 150 feet West of the Northwest corner of the intersection of West Adams Street and South Aberdeen Street to a point on the North line of said Lot 2) taken as a tract of land in Assessor's Division of the South 1/2 of Block 12 (except the West 200 feet thereof) in Canal Trustees' Subdivision of the West 1/2 and the West 1/2 of the Northeast 1/4 of Section 17, Township 39 North, Range 14, East of the Third Principal Meridian, lying below a horizontal plane having an elevation of +26.29 Chicago City Datum which is bounded and described as follows: beginning at the Southwest corner of said tract; thence North 00° 00' 00" East along the West line of said tract a distance of 8.40 feet; thence North 90° 00' 00" East, 1.36 feet; thence North 00° 00' 00" East, 17.52 feet; thence North 90° 00' 00" East, 17.88 feet; thence South 00° 00' 00" West, 17.20 feet; thence South 90° 00' 00" West, 4.25 feet; thence South 00° 00' 00" West, 8.72 feet to the South line of said tract (the South line of said tract also being the North line of W. Adams St.); thence South 90° 00' 00" West along the South line of said tract a distance of 14.99 feet to the place of beginning, all in Cook County, Illinois.

Parcel 2: Non-exclusive easement appurtenant to and for the benefit of Parcel 1 as created by the Amended and Restated Declaration of Covenants, Conditions, Restrictions and Reciprocal Easements for 1100 W. Adams, Chicago, Illinois 60607 dated June 30, 2014 and recorded July 7, 2014 as document number 1418816060, as particularly described and defined therein.